**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| AMERICAN PETROLEUM INSTITUTE, ET AL. | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:21-cv-2506 |
| v. | ) ) | Honorable Judge Terry A. Doughty |
| UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL. | ) ) ) | Magistrate Judge Kathleen Kay |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS UNDER RULE 12(b)**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.     All Parties Reside Outside Louisiana. .................................................................... 2

    II.    Plaintiffs Challenge Only Agency Actions That Occurred Outside This
          District................................................................................................................... 3

LEGAL STANDARDS ...................................................................................................... 4

    I.     Motion to Dismiss for Improper Venue ................................................................. 4

    II.    Motion to Dismiss for Failure to State a Claim .................................................... 4

    III.   Motion to Dismiss for Lack of Subject Matter Jurisdiction ................................. 5

ARGUMENT ..................................................................................................................... 5

    I.     There is No Basis for Venue in the Western District of Louisiana ....................... 5

    II.    Plaintiffs Cannot Challenge the Five-Year Leasing Program in this Court ........ 10

    III.   Plaintiffs' Challenges To Onshore Decisions That Occurred Before May
          Are Time Barred Under The Mineral Leasing Act.............................................. 15

CONCLUSION................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Alabama-Coushatta Tribe of Texas v. United States*,
757 F.3d 484 (5th Cir. 2014) ................................................................ 17

*Allied-Bruce Terminix Co. v. Dobson*,
513 U.S. 265 (1995) .............................................................................. 16

*Am. Petroleum Inst. v. EPA*,
216 F.3d 50 (D.C. Cir. 2000) ............................................................... 16

*Ambraco, Inc. v. Bossclip B.V.,*
570 F.3d 233 (5th Cir. 2009) ................................................................. 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 4

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
No. 216CV01417JRGRSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018) ............................ 9

*Barrera-Montenegro v. United States*,
74 F.3d 657 (5th Cir. 1996) ................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 4

*Bennett v. Moran Towing Towing Corp.*,
181 F. Supp. 3d 393 (S.D. Tex. 2016) ................................................... 7

*Collins v. Doe*,
No. CIV. A. H-10-2882, 2012 WL 1414246 (S.D. Tex. Apr. 23, 2012) ................................... 9

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
563 F.3d 466 (D.C. Cir. 2009) ............................................................. 12

*Ctr. for Sustainable Economy v. Jewell*,
779 F.3d 588 (D.C. Cir. 2015) ............................................................. 12

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ............................................................................. 12

*Fletcher v. U.S. Dep't of Just.*,
17 F. Supp. 3d 89 (D.D.C. 2014) ........................................................... 4

*Garcia v. Acosta*,
393 F. Supp. 3d 93 (D.D.C. 2019) ...................................................... 6, 9

*Gardner v. State of Ala. for & in Behalf of Dep't of Pensions & Sec.*,
385 F.2d 804 (5th Cir. 1967) ............................................................... 11

*Gottselig v. Energy Corp. of Am.*,
No. CIV.A. 15-971, 2015 WL 5820771 (W.D. Pa. Oct. 5, 2015) ............................................ 7

*Graham v. Dyncorp Int'l, Inc.*,
   973 F. Supp. 2d 698 (S.D. Tex. 2013) ................................................................................... 9

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ................................................................................................................ 7

*Impact Energy Res., LLC v. Salazar*,
   No. 2:09-CV-435, 2010 WL 3489544 (D. Utah Sept. 1, 2010) ............................................ 16

*In re Howard*,
   570 F.3d 752 (6th Cir. 2009) ............................................................................................... 11

*In re S. Recycling, LLC*,
   982 F.3d 374 (5th Cir. 2020) ................................................................................................. 5

*Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*,
   665 F.3d 671 (5th Cir. 2011) ................................................................................................. 9

*JTB Tools & Oilfield Servs., L.L.C. v. United States*,
   831 F.3d 597 (5th Cir. 2016) ................................................................................... 10, 11, 12

*Las Americas Immigrant Advoc. Ctr. v. Trump*,
   475 F. Supp. 3d 1194 (D. Or. 2020) ...................................................................................... 7

*Ligon v. LaHood*,
   614 F.3d 150 (5th Cir. 2010) ............................................................................................... 11

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) .............................................................................................................. 16

*Naartex Consulting Corp. v. Watt*,
   722 F.2d 779 (D.C. Cir. 1983) ............................................................................................... 9

*Nat'l Football League Players Ass'n v. Nat'l Football League*,
   874 F.3d 222 (5th Cir. 2017) ................................................................................................. 5

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) .............................................................................................................. 18

*Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*,
   145 F.3d 120 (3d Cir. 1998) ................................................................................................. 10

*Orleans Limousines & Transp., Inc. v. Hurd Ins. Agency, Inc.*,
   CIV. A. 02-2742, 2003 WL 1193681 (E.D. La. Mar. 13, 2003) ............................................. 9

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ................................................................................................. 5

*Ricks v. Cadorath Aerospace Lafayette, LLC*,
   No. CV 15-6686, 2017 WL 590293 (E.D. La. Feb. 14, 2017) ................................................. 9

*Rogers v. Civ. Air Patrol*,
   129 F. Supp. 2d 1334 (M.D. Ala. 2001) ................................................................................ 9

*Telecomms. Research & Action Ctr. v. F.C.C.*,
   750 F.2d 70 (D.C. Cir. 1984) ................................................................ 10, 11, 12

*Texas v. United States*,
   891 F.3d 553 (5th Cir. 2018) ......................................................................... 18

*United States v. Gonzales*,
   520 U.S. 1 (1997) ........................................................................................... 16

*United States v. Philip Morris, Inc.*,
   116 F. Supp. 2d 131 (D.D.C. 2000) ................................................................ 4

*UOP LLC v. Exterran Energy Sols., L.P.*,
   No. MO:20-CV-233-DC, 2021 WL 4096560 (W.D. Tex. Aug. 26, 2021) ............... 4

*Villa v. Salazar*,
   933 F. Supp. 2d 50 (D.D.C. 2013) ................................................................... 6

**Statutes**

28 U.S.C. § 1391(c)(2) ......................................................................................... 6

28 U.S.C. § 1391(e)(1) ......................................................................................... 6

28 U.S.C. § 1406(a) ............................................................................................. 4

30 U.S.C. § 226-2 ...................................................................... 2, 15, 16, 17, 18, 19

43 U.S.C. § 1331 ............................................................................................. 3, 13

43 U.S.C. § 1349(b)(1) ....................................................................................... 13

43 U.S.C. § 1349(c)(1) .................................................................................. 10, 13

43 U.S.C. § 1349(c)(1) .................................................................................. 11, 13

43 U.S.C. § 1349(c)(1)-(2) ................................................................................. 13

43 U.S.C. § 1349(c)(2) ....................................................................................... 13

5 U.S.C. § 551(13) .............................................................................................. 12

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 5

Fed. R. Civ. P. 12(b)(3) ......................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 4

Fed. R. Civ. P. 12(h)(3) ......................................................................................... 5

**Other Authorities**

86 Fed. Reg. 10,132 (Feb. 18, 2021) .................................................................... 8

86 Fed. Reg. 10,994 (Feb. 23, 2021) .................................................................... 8

86 Fed. Reg. 7,619 (Feb. 1, 2021) ................................................................................. 3

Eric M. Fraser et al., *The Jurisdiction of the D.C. Circuit*, 23 Cornell J. of Law and Public Policy
    131 (2013)...................................................................................................................... 14

## INTRODUCTION

This case is the latest in a series of challenges relating to Section 208 of Executive Order 14,008 and the Department of the Interior's management of its onshore and offshore oil and gas leasing programs.  After opting not to intervene in the previous suits, Plaintiffs now bring a broad-scale action combining some claims from the prior Louisiana suit, other claims from the two prior Wyoming suits, and a new claim about an alleged failure to adopt the next Five-Year Program.  Plaintiffs' new suit, however, suffers at least three threshold defects.

First, Plaintiffs have filed this case in an improper venue.  Unlike the State litigation in which the State of Louisiana is a plaintiff, none of the Plaintiffs in this action reside in this district.  Defendants also do not reside in this district.  And Plaintiffs do not challenge agency decisions or processes that substantially occurred in this district.  The Court should either dismiss this action without prejudice so that Plaintiffs can choose whether to re-file it in a proper venue, or it should transfer this case to the most logical forum—the District of Columbia, where most parties reside.

Second, Plaintiffs' new claim alleging unlawful delay in adopting the next Five-Year Leasing Program cannot be brought before this Court, because Congress has provided the U.S. Court of Appeals for the D.C. Circuit with exclusive statutory jurisdiction over such a claim. This claim also must be dismissed or, in the alternative, transferred to the only appropriate forum.

Third, if the Court adheres to its earlier ruling in *Louisiana v. Biden* that the agency actions at issue are reviewable under the Administrative Procedure Act, Plaintiffs' claims involving the Mineral Leasing Act are barred by its statute of limitations, which requires actions "contesting a decision of the Secretary [of the Interior] involving any oil and gas lease" to be

brought within ninety days of the decision, 30 U.S.C. § 226-2.  Here, Plaintiffs challenge a series of decisions postponing onshore lease sales, with dates ranging from January 27 to April 21, 2021.  Plaintiffs also bring an improper programmatic challenge to those actions collectively. Because Plaintiffs filed their Complaint at least 117 days after their complained-of onshore leasing decisions were announced, the claims involving the Mineral Leasing Act must be dismissed.

## BACKGROUND

### I.  All Parties Reside Outside Louisiana.

Plaintiffs, twelve energy industry trade associations led by the American Petroleum Institute (API), filed this action on August 16, 2021.  *See* Compl., Doc. 1.  Four Plaintiffs are headquartered in Washington, D.C.[1]  The remaining Plaintiffs have headquarters scattered throughout Montana, North Dakota, Oklahoma, Texas, Utah, Mississippi, and California.[2]

---

[1] Declaration of Michael S. Sawyer (Sawyer Decl.), Ex. 1, API | Contact, https://www.api.org/contact (last visited Nov. 15, 2021); *id.*, Ex. 2, Contact - Am. Exploration & Production Council, https://www.axpc.org/who-we-are/contact/ (last visited Nov. 15, 2021); *id.*, Ex. 3, Contact Us – Independent Petroleum Ass'n of Am., https://www.ipaa.org/contact-us/ (last visited Nov. 15, 2021); *id.*, Ex. 4 – Contact Us – Nat'l Ocean Indus. Ass'n, https://www.noia.org/contact-us (last visited Nov. 15, 2021).

[2] Sawyer Decl., Ex. 5, Contact Us | Montana Petroleum Association, https://montanapetroleum.org/contact-us (last visited Nov. 15, 2021); *id.*, Ex. 6, Contact – North Dakota Petroleum Council, https://www.ndoil.org/contact (last visited Nov. 15, 2021); *id.*, Ex. 7, Contact – The Petroleum Alliance of Oklahoma, https://www.thepetroleumalliance.com/contact/ (last visited Nov. 15, 2021); *id.*, Ex. 8, Contact – Int'l Ass'n of Geophysical Contractors, https://iagc.org/contact-iagc/ (last visited Nov. 15, 2021); *id.*, Ex. 9 – About/Contact – Utah Petroleum Association, https://utahpetroleum.org/about/ (last visited Nov. 15, 2021); *id.*, Ex. 10, Southeast Oil and Gas Association, Articles of Incorporation (Dec. 4, 2019); *id.*, Ex. 11 – Contact – Western States Petroleum Association, https://www.wspa.org/about/contact (last visited Nov. 15, 2021); *see also* Compl. ¶ 10 (alleging that Plaintiff International Association of Drilling Contractors is "based in Houston, Texas").

The Complaint identifies seven federal agencies as Defendants.  Compl., at 1.  Six of the seven agencies reside in Washington, D.C.  The last federal agency, the Bureau of Land Management, resides in Colorado.[3]

## II.    Plaintiffs Challenge Only Agency Actions That Occurred Outside This District.

The Complaint challenges several types of alleged agency actions.  First, the Complaint challenges individual agency actions that occurred between January 27 and April 21, 2021.  Compl. ¶¶ 72–73.  All of those actions occurred outside this District in locations from Wyoming to Utah to Colorado to New Mexico.  *See id.*

Second, Plaintiffs claim that "there has been a directive from the highest levels of the Department [of the Interior] to halt all such lease sales," which they label a "moratorium."  *Id.* ¶ 74.  Plaintiffs allege that this "moratorium" issued "in direct response to Section 208 of President Biden's Executive Order 14008, *Tackling the Climate Crisis at Home and Abroad*, issued on January 27, 2021," which "instructs the Secretary of the Interior to 'pause new oil and natural gas leases on public lands or in offshore waters pending completion of a comprehensive review and reconsideration of Federal oil and gas permitting and leasing practices.'"  *Id*. ¶ 2 (quoting 86 Fed. Reg. 7,619, 7,624–25 (Feb. 1, 2021) without recognizing the proviso that the Secretary should do so only "[t]o the extent consistent with applicable law").  But Plaintiffs do not allege that any actions related to this alleged "moratorium" occurred within this District.

Third, Plaintiffs challenge an alleged "failure to timely issue a new Five-Year Leasing Program" under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq*. (OCSLA).  Compl. ¶ 25.  Plaintiffs do not allege, however, that any activity regarding the adoption of a new Five-Year Leasing Program occurred within this District.

---

[3] U.S. Bureau of Land Management, Headquarters Move West, https://www.blm.gov/office/national-office/hq-move-west (last visited Nov. 15, 2021).

## LEGAL STANDARDS

### I.  Motion to Dismiss for Improper Venue

A party may move to dismiss an action for "improper venue."  Fed. R. Civ. P. 12(b)(3).

"When an objection to venue is raised, the plaintiff bears the burden of demonstrating that venue

is proper in the selected forum."  *UOP LLC v. Exterran Energy Sols., L.P.*, No. MO:20-CV-233-

DC, 2021 WL 4096560, at *2 (W.D. Tex. Aug. 26, 2021).  The court shall review any factual

matters in the light most favorable to the non-moving party, but can evaluate facts by considering

"(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in

the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts."  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009) (citation

omitted).  A case filed in the wrong division or district shall be dismissed, unless the court

determines it would be in the interest of justice to transfer the case to any district or division in

which venue is proper and the case could have been brought.  *See* 28 U.S.C. § 1406(a).

### II.  Motion to Dismiss for Failure to State a Claim

Dismissal is appropriate if a complaint "fail[s] to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  A court considering a Rule 12(b)(6) motion presumes "the

complaint's factual allegations are true and construes them liberally in the plaintiff's favor."

*Fletcher v. U.S. Dep't of Just.*, 17 F. Supp. 3d 89, 92–93 (D.D.C. 2014) (citing *United States v.*

*Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000)).  Even with this presumption "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).

4

### III.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss may also address a lack of subject matter jurisdiction.  *See* Fed. R.

Civ. P. 12(b)(1).  Subject matter jurisdiction can be raised at any time, or by the Court *sua*

*sponte.  Id*. § 12(h)(3); *Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d

222, 227–29 (5th Cir. 2017).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on

the party asserting jurisdiction."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)

(citation omitted).  "Accordingly, the plaintiff constantly bears the burden of proof that

jurisdiction does in fact exist." *Id.* (citation omitted).  "A district court may dismiss a case under

Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed

facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the

court's resolution of disputed facts.'" *In re S. Recycling, LLC*, 982 F.3d 374, 379 (5th Cir. 2020)

(quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

### ARGUMENT

This case cannot be brought in this Court because the Western District of Louisiana is not

a proper venue for Plaintiffs' claims.  The Court should either transfer the case to the U.S.

District Court for the District of Columbia or dismiss it for improper venue so that Plaintiffs can

decide whether to re-file the case in a proper venue of their choosing.  If the Court proceeds

beyond the venue/transfer analysis, however, it should dismiss the suit, or at least several claims,

for lack of jurisdiction.

### I.     There is No Basis for Venue in the Western District of Louisiana

This case should be dismissed or transferred to another district, because the Western

District of Louisiana is not a proper venue for the claims in this case.  In cases against federal

agencies or officials, venue is proper "in any judicial district in which (A) a defendant in the

action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred,

or a substantial part of the property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).  But Plaintiffs cannot satisfy any of these prerequisites here.  No Defendant resides in this judicial district.  No Plaintiff resides in this judicial district.  No challenged agency action has occurred in this judicial district.  And Plaintiffs can point to no event or omission in this District, let alone a substantial one, that gave rise to their claims challenging an alleged nationwide moratorium issued by Presidentially-appointed officials and bureaus within the Department of the Interior.

Beginning with the residence, Plaintiffs do not allege that Defendants' residence forms a basis for venue.  Compl. ¶ 28.  Nor could they, because federal agencies and officers acting in their official capacity typically "reside" in the District of Columbia for venue purposes, *see Garcia v. Acosta*, 393 F. Supp. 3d 93, 108 (D.D.C. 2019); *Villa v. Salazar*, 933 F. Supp. 2d 50, 55 (D.D.C. 2013), and the Bureau of Land Management currently resides in the District of Colorado.[4]

Plaintiffs similarly do not allege that any of the Plaintiff entities reside in the Western District of Louisiana.  Plaintiffs offer instead that many of their "members" are located in this District.  Compl. ¶ 28.  But these allegations are legally insufficient to establish venue, because a trade group cannot establish residence based on the location of its members.  For "all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside . . . if a plaintiff, *only* in the judicial district in which it maintains its *principal place of business*[.]"  28 U.S.C. § 1391(c)(2) (emphasis added).  An entity's principal place of business:

---

[4]      The BLM national headquarters moved from the District of Columbia to Grand Junction, Colorado in 2020, and thus BLM now resides in the District of Colorado for venue purposes.

is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's "nerve center."  And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010); *see also Bennett v. Moran Towing Towing Corp.*, 181 F. Supp. 3d 393, 398 (S.D. Tex. 2016); *Las Americas Immigrant Advoc. Ctr. v. Trump*, 475 F. Supp. 3d 1194, 1202 (D. Or. 2020).  "[I]t is impossible for a business . . . to have two principal places of business," *Gottselig v. Energy Corp. of Am.*, No. CIV.A. 15-971, 2015 WL 5820771, at *4 (W.D. Pa. Oct. 5, 2015), because the "word 'principal' requires us to pick out the 'main, prominent' or 'leading' place," *Hertz Corp.*, 559 U.S. at 93 ("The word 'place' is in the singular, not the plural.").  The location of an organization's members is thus irrelevant in the venue analysis.

Plaintiffs' headquarters appear to be as follows:

American Petroleum Institute – Washington, D.C. (*see* Ex. 1)
Am. Exploration & Production Council – Washington, D.C. (*see* Ex. 2)
Indep. Petroleum Ass'n of America – Washington, D.C. (*see* Ex. 3)
Int'l Ass'n of Drilling Contractors – Houston, TX (*see* Compl. ¶ 10)
Int'l Ass'n of Geophysical Contractors – Houston, TX (*see* Ex. 8)
Nat'l Ocean Industries Ass'n – Washington, D.C. (*see* Ex. 4)
Montana Petroleum Ass'n – Helena, MT (*see* Ex. 5)
North Dakota Petroleum Council – Bismarck, ND (*see* Ex. 6)
Petroleum All. of Oklahoma – Oklahoma City, OK (*see* Ex. 7)
Southeast Oil and Gas Ass'n – Jackson, MS (*see* Ex. 10)
Utah Petroleum Ass'n – Cottonwood Heights, UT (*see* Ex. 9)
Western States Petroleum Ass'n – Sacramento, CA (*see* Ex. 11)

Since none of these trade groups are headquartered in Louisiana, and thus none reside in this District, Plaintiffs cannot rely on their place of residence to establish venue in this District.

Finally, Plaintiffs incorrectly contend that "a substantial part of the events or omissions giving rise to the Complaint occur within this judicial district[.]" Compl. ¶ 28.[5]  Plaintiffs' Complaint challenges an alleged "indefinite moratorium on all federal oil and gas lease sales onshore and on the Outer Continental Shelf." Compl. ¶ 1.  They allege that this moratorium flows from Section 208 of Executive Order 14,008, *id.* ¶ 2, that it has been implemented through a "uniform and systemic cancellation of all federal oil and gas lease sales since January 27, 2021," *id.* ¶ 4, and that it has been further implemented through Defendants' alleged delay in the preparation of a new Five-Year Program under OCSLA, *id.* ¶¶ 119–125.  But none of the actions or omissions Plaintiffs identify as having been taken in furtherance of the alleged moratorium occurred in this District.  To the contrary, the alleged onshore lease sale deferrals or postponements occurred in Nevada, Wyoming, Montana/Dakotas, Utah, Colorado, Virginia,[6] Oklahoma, and New Mexico for onshore leases—where the relevant BLM State or Field Offices are located, *see* Compl. ¶ 72a through f, ¶ 72i through j.  And each of the actions relating to offshore leasing, *see id.* ¶ 72g through h, occurred in New Orleans,[7] which is in the Eastern District of Louisiana, and in Washington, D.C.,[8] respectively.  Finally, Plaintiffs allege no facts to support any contention that the alleged moratorium—which they describe as flowing from "a directive from the highest levels of the Department [of the Interior]," *see id.* ¶ 74—could have

---

[5]    Plaintiffs concede that "no real property is involved in this action." Compl. ¶ 28.

[6]    The BLM Eastern States office is located in Virginia, with Eastern States district offices in Wisconsin and Mississippi. *See* https://www.blm.gov/eastern-states (last visited Nov. 8, 2021).

[7]    The notice rescinding the record of decision for Lease Sale 257 was signed by Michael A. Celata, the Regional Director of the Bureau of Ocean Energy Management's Gulf of Mexico Regional Office, which is located in New Orleans, Louisiana. *See* 86 Fed. Reg. 10,132, 10,132 (Feb. 18, 2021).

[8]    The notice rescinding the public review period for Lease Sale 258 was signed by Walter D. Cruickshank, in his capacity as Acting Director of the Bureau of Ocean Energy Management. *See* 86 Fed. Reg. 10,994 (Feb. 23, 2021).

arisen in the Western District of Louisiana. *See Garcia*, 393 F. Supp. 3d at 108 (rejecting contention that a substantial part of the events giving rise to a challenged Department-wide policy and practice occurred in Illinois rather than in the District of Columbia); *see also Rogers v. Civ. Air Patrol*, 129 F. Supp. 2d 1334, 1339 (M.D. Ala. 2001).

In sum, Plaintiffs cannot satisfy the venue statute and, therefore, their Complaint should either be dismissed or transferred to a more appropriate district.[9] And Plaintiffs cannot evade this result by seeking to consolidate their case with the *Louisiana* litigation. *See* Mot. to Consolidate, ECF No. 23. Even an order granting that motion could not cure the venue deficiency in Plaintiffs' Complaint because consolidation does not create party status that did not exist previously, and it also does not merge the cases for jurisdictional purposes. *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 676 (5th Cir. 2011). Rather, "[w]here there are multiple parties or multiple claims in a lawsuit, venue must be proper for each defendant and each claim." *B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 216CV01417JRGRSP, 2018 WL 7140299, at *6 (E.D. Tex. Nov. 30, 2018), *report & recommendation adopted,* No. 216CV01417JRGRSP, 2019 WL 354883 (E.D. Tex. Jan. 28, 2019); *Collins v. Doe*, No. CIV.A. H-10-2882, 2012 WL 1414246, at *3 (S.D. Tex. Apr. 23, 2012). Thus, Plaintiffs' Complaint would need to be dismissed or transferred for improper venue regardless of how this Court ultimately resolves Plaintiffs' consolidation motion. *Ricks v. Cadorath Aerospace Lafayette, LLC*, No. CV 15-6686, 2017 WL 590293, at *9 (E.D. La. Feb. 14, 2017).

---

[9]    Upon determining that venue is improper, a district court "has discretion to dismiss or transfer the case in the interest of justice to any district where it could have been brought." *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 705 (S.D. Tex. 2013) (citing 28 U.S.C. § 1406(a)). Whether dismissal or transfer is appropriate lies within the sound discretion of the district court. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983); *Orleans Limousines & Transp., Inc. v. Hurd Ins. Agency, Inc.*, No. CIV.A. 02-2742, 2003 WL 1193681, at *4 (E.D. La. Mar. 13, 2003).

## II.     Plaintiffs Cannot Challenge the Five-Year Leasing Program in this Court

Even were the Court to determine that venue is proper in this Court, it should dismiss Plaintiffs' Sixth Cause of Action because it lies in the exclusive jurisdiction of the D.C. Circuit. That Cause of Action contends that Defendants have unreasonably delayed in preparing the next Five-Year Leasing Program under OCSLA.  Plaintiffs allege that the current Program "is scheduled to expire on July 1, 2022[,]" that "Defendants cannot complete all requisite steps to timely propose and adopt a new Five-Year Leasing Program" before then, and that "Defendants' failure to timely issue a new Five-Year Leasing Program therefore is arbitrary and capricious, is in excess of Defendants' statutory authority, and unlawfully withholds or unreasonably delays that required action."  Compl. ¶¶ 119, 120, 125.  This claim cannot be brought before this Court because Congress has directed that "[a]ny action of the Secretary to approve a leasing program pursuant to section 1344 of this title shall be subject to judicial review only in the United States Court of Appeal for the District of Columbia."  43 U.S.C. § 1349(c)(1).

Under both D.C. Circuit and Fifth Circuit law, when Congress provides exclusive jurisdiction to review agency actions to a court of appeals, that exclusive jurisdiction extends to agency inaction.  *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 78 (D.C. Cir. 1984) (*TRAC*); *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 599–601 (5th Cir. 2016) (citing *TRAC*).  "[W]here administrative enabling statutes . . . grant exclusive jurisdiction to a particular court to review past actions of an agency, that court necessarily has the exclusive jurisdiction to review inaction as well."  *JTB Tools*, 831 F.3d at 600 (quoting *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 23 (3d Cir. 1998) (*OCAWU*)).  As the Fifth Circuit has explained, these jurisdictional provisions must be "read in conjunction with the [Administrative Procedure Act (APA)]," *id.* at 599 (quoting *OCAWU*, 145 F.3d at 122–23), which "provides, in relevant part, that 'agency action includes the

10

whole or a part of an agency rule . . . or denial thereof, *or failure to act*,'" *id.* at 599 n.3 (quoting 5 U.S.C. § 551(13)) (emphasis added).  Thus, when read in conjunction with the APA, 43 U.S.C. § 1349(c)(1) provides that "[a]ny action [including any failure] of the Secretary to approve a leasing program pursuant to section 1344 of this title shall be subject to judicial review only in the" D.C. Circuit.

Because Plaintiffs' Sixth Cause of Action is expressly directed at an alleged "failure to timely issue a new Five-Year Leasing Program," Compl. ¶ 125, that claim is "subject to judicial review only" in the D.C. Circuit, 43 U.S.C. § 1349(c)(1).  "It is well settled that if Congress, as here, specifically designates a forum for judicial review of administrative action, that forum is exclusive.  And this result does not depend on Congress using the word 'exclusive' in the statute providing for a forum for judicial review."  *Gardner v. State of Ala. for & in Behalf of Dep't of Pensions & Sec.*, 385 F.2d 804, 810 (5th Cir. 1967) (citations omitted).  "Specific grants of jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts." *JTB Tools*, 831 F.3d at 601 n.5 (quoting *Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010)). And "a plaintiff may not circumvent the exclusive jurisdiction of the court of appeals by collaterally attacking an administrative order in a federal district court."  *Ligon*, 614 F.3d at 155.

Limiting the review of such agency inaction to the courts of appeal is necessary to protect the "future jurisdiction" of those courts of appeal.  *TRAC*, 750 F.2d at 76; *In re Howard*, 570 F.3d 752, 756 (6th Cir. 2009).  Otherwise, "the statutory obligation of a Court of Appeals to review on the merits" specific agency actions could "be defeated" in two ways: first, "by an agency that fails to resolve disputes" or declines to act to avoid the court of appeals, *TRAC*, 750 F.2d at 76; and second, by plaintiffs who "file preemptive suits in the district court and thereby avoid the court of appeals," *Howard*, 570 F.3d at 756 (internal citations and quotations omitted).

Because neither approach is consistent with the APA definition of "agency action" as including "failure[s] to act," 5 U.S.C. § 551(13), courts of appeal have consistently rejected efforts to exclude claims involving agency inaction from their exclusive jurisdiction.  *See JTB Tools*, 831 F.3d at 600 & n.4 (collecting cases).

"Furthermore, there are compelling policy reasons for holding that the jurisdiction of the Court of Appeals is exclusive."  *TRAC*, 750 F.2d at 78.  Because "[a]ppellate courts develop an expertise concerning the agencies assigned them for review," "[e]xclusive jurisdiction promotes judicial economy and fairness to the litigants by taking advantage of that expertise."  *Id.*  Here, the D.C. Circuit has developed such expertise in reviewing challenges to prior five-year programs.  *E.g.*, *Center for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (reviewing challenge to 2012–2017 program); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 471 (D.C. Cir. 2009) (same for 2007–2012 program).  In contrast, "[p]lacing initial review in the district court [has] the negative effect . . . of requiring duplication of the identical task in the district court and in the court of appeals; both courts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review.  One crucial purpose of . . . jurisdictional provisions that place initial review in the courts of appeals is to avoid the waste attendant upon this duplication of effort."  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Based on the foregoing considerations, the Supreme Court has developed a governing canon of construction: "Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals."  *Id.* at 745.  Here, there is no such "firm indication" that Congress intended to locate initial review of

Plaintiffs' Sixth Cause of Action in the district courts.  To the contrary, the OCSLA statutory

scheme demonstrates that Congress divided different types of OCSLA challenges between the

district courts, the regional circuits, and the D.C. Circuit.  *See* 43 U.S.C. §§ 1349(b)(1),  (c)(1)–

(2).  Congress granted district courts jurisdiction over "cases and controversies arising out of, or

in connection with (A) any operation conducted on the outer Continental Shelf . . . or (B) the

cancellation, suspension, or termination of a lease or permit." 43 U.S.C. § 1349(b)(1).  And

Congress granted regional circuits jurisdiction to review "[a]ny action of the Secretary to

approve, require modification of, or disapprove any exploration plan or any development and

production plan." *Id.* § 1349(c)(2).  But Plaintiffs' challenge to an alleged "failure to timely

issue a new Five-Year Leasing Program," Compl. ¶ 125, falls outside the ambit of the regional

circuits or the district courts, as it focuses on the Secretary's alleged actions (including inactions)

"to approve a leasing program" under OCSLA.  43 U.S.C. § 1349(c)(1).

In creating this tripartite jurisdictional scheme under OCSLA, Congress distinguished

between claims having greater localized impact and those with nationwide scope.  Claims arising

out of a particular OCS operation, lease, or permit could be brought "in the judicial district of the

State nearest the place the cause of action arose." *Id.* § 1349(b)(1).  And claims involving

actions pertaining to "exploration plan[s]" or "development and production plan[s]," which are

limited to specific areas,[10] "shall be subject to judicial review only in a United States court of

appeals for a circuit in which an affected State is located." *Id.* § 1349(c)(2).  In contrast to those

claims involving greater localized impact, Congress directed that challenges involving the

approval of the OCSLA leasing program were subject to review only in the D.C. Circuit, *id.*

§ 1349(c)(1), as the five-year program establishes a leasing approach throughout the nation.  The

---

[10] *See* 43 U.S.C. § 1331(k)–(m) (defining "exploration," "development" and "production").

nationwide effect of that program is demonstrated by the 2019–2024 Draft Proposed Program, which proposes 47 lease sales around the nation:

Figure 2: 2019–2024 Draft Proposed Program Pacific, Gulf of Mexico, and Atlantic Region Program Areas



Sawyer Decl., Ex. 12, BOEM, 2019–2024 National Outer Continental Shelf Oil and Gas Leasing Draft Proposed Program, at 9 (January 2018).  Given that Plaintiffs' Sixth Cause of Action seeks to review alleged delays in adopting this nationwide program, Congress's decision to require that claim to be brought in the D.C. Circuit aligns with a broader approach in which "Congress tends to grant the D.C. Circuit exclusive jurisdiction over matters that are likely to have a national effect."  Eric M. Fraser et al., *The Jurisdiction of the D.C. Circuit*, 23 Cornell J. of Law and Public Policy 131 (2013) (collecting exclusive jurisdictional provisions throughout the U.S. Code).

In sum, Congress created exclusive jurisdiction in the D.C. Circuit for any challenge to an OCSLA Five-Year Program, or the purported delay in approving one. Plaintiffs' Sixth Cause of Action, therefore, cannot be brought before this Court.

### III. Plaintiffs' Challenges To Onshore Decisions That Occurred Before May Are Time Barred Under The Mineral Leasing Act.

Plaintiffs' Third Cause of Action in its entirety, and their First, Second, and Eighth Causes of Action insofar as they pertain to onshore lease sales, must be dismissed because they are barred by the ninety-day statute of limitations in the Mineral Leasing Act (MLA), even assuming Plaintiffs have identified any agency action reviewable under the APA. Those four Causes of Action contend that BLM improperly halted quarterly sales in violation of the MLA's substantive requirements and the APA's procedural requirements. In identifying the specific challenged onshore decisions, however, Plaintiffs identify only decisions that occurred between January and April 2021. *See* Compl. ¶¶ 72–73. And, elsewhere, Plaintiffs clarify that they challenge "the same federal oil and gas leasing moratorium" that the *Louisiana* Plaintiffs challenged in their March 24, 2021 complaint—thus conceding that their moratorium claim must have accrued sometime earlier. *Compare* State Compl., *Louisiana v. Biden*, No. 21-cv-778, Doc. 1 (Mar. 24, 2021), *with* Reply in Supp. of Mot. to Consolidate 2, Doc. 61 (Nov. 8, 2021) (Consolidation Reply) ("The Associations here challenge the same federal oil and gas leasing moratorium.").

These Causes of Action are time-barred because Plaintiffs did not file suit until August, more than ninety days after every one of those decisions occurred. Congress directed in the MLA's ninety-day statute of limitations that "[n]o action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter." 30 U.S.C.

§ 226-2.  And Plaintiffs themselves have recognized the broad applicability of the MLA's statute

of limitations; as API recently told another court:

> That language [of § 226-2] is broad.  First, the term "'involving' is broad and
> indeed the functional equivalent of 'affecting.'"  *Allied-Bruce Terminix Co. v.
> Dobson*, 513 U.S. 265, 273–74 (1995).  Likewise, "the word 'any' has an
> expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"
> *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New
> International Dictionary 97 (1976)).  Finally, the phrase "relating to" is "a broad
> one" that means "to stand in some relation; to have bearing or concern; to pertain;
> refer; to bring into association or connection with."  [*Morales v. Trans World
> Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quotation omitted).]  In short, where a
> party files an action contesting a decision of the Secretary that "involv[es]" at
> least one oil and gas lease, Congress limited such claims to those filed within 90
> days of the decision.

Sawyer Decl., Ex. 13, Intervenor-Defendant API's Mem. in Supp. of Mot. to Dismiss, *WildEarth

Guardians v. Haaland*, No. 21-cv-00175-RC, Doc. 28-1, at 15 (D.D.C. June 9, 2021) (API Mot.).

Because the challenged onshore decisions postponing lease sales for the first and second quarters

of 2021 occurred by April, Compl. ¶¶ 72–73, Plaintiffs' August challenges to those allegedly

final decisions[11] are barred by the MLA's ninety-day statute of limitations.  *Impact Energy Res.,

LLC v. Salazar*, No. 2:09-CV-435, 2010 WL 3489544, at *10 (D. Utah Sept. 1, 2010), *aff'd*, 693

F.3d 1239 (10th Cir. 2012) ("Faced with a strict statute of limitations, the plaintiffs failed to file

their suit [to compel lease issuance] within ninety days of the Secretary's final decision.  Under

30 U.S.C. § 226–2, this is too late.").

---

[11] Defendants disagree that these postponements were final decisions subject to judicial review
under the APA, *see, e.g.*, *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 68 (D.C. Cir. 2000) ("A
decision by an agency to defer taking action is not a final action reviewable by the court."), and
accordingly maintain that the Court could dismiss all the claims for lack of jurisdiction.
Defendants, however, recognize that the Court rejected that argument in the *Louisiana* litigation.
Report & Recommendation 27–28, *Louisiana v. Biden*, No. 21-cv-778, Doc. 154 (Aug. 23, 2021)
(Report and Recommendation).  If, per the Court's conclusion in *Louisiana*, final decisions subject
to judicial review were in place by March, Plaintiffs in this case were required to challenge those
decisions before August under the MLA's ninety-day statute of limitations.  30 U.S.C. § 226-2.

Plaintiffs, moreover, cannot evade dismissal by contending that their MLA claims target a "continuing violation."  Plaintiffs allege that, through actions taken from January 27 through March 4, 2021, "Defendants adopted a moratorium by halting" certain sales.  Compl. ¶ 72. Because the Complaint alleges that a moratorium was adopted no later than March 4, 2021, any challenges to that alleged "moratorium" were required to be filed by June 2, 2021.  30 U.S.C. § 226-2.  And this remains true despite the programmatic nature of Plaintiffs' claims.  As Defendants explained in the *Louisiana* litigation, the Department of the Interior did not make any final decision to adopt a "moratorium," Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. 9–12, *Louisiana v. Biden*, No. 21-cv-778, Doc. 120 (May 19, 2021), and thus Plaintiffs' challenge to "Defendants' collective actions to halt federal oil and gas lease sales," *id.* ¶ 76, is an improper programmatic challenge.  *See Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 491–92 (5th Cir. 2014) (rejecting a "blanket challenge to all of the Government's actions with respect to all permits and leases" because jurisdiction under the APA was limited "to a *particular and identifiable* action taken by the Government" (emphasis added)).  Plaintiffs' claim should be dismissed on that basis alone.[12]  Defendants recognize, however, that the Court authorized the *Louisiana* plaintiffs to proceed past the pleading stage by construing the challenge in that case as one "targeted towards the Secretary's [alleged] unwritten decision to postpone and cancel previously scheduled lease sales under the MLA and OCLSA and the agencies' subsequent implementation of that decision."  Report & Recommendation 27, Doc.154.  Even accepting that interpretation of the claim in the *Louisiana* suit, Plaintiffs here cannot challenge "the same"

---

[12] Indeed, Plaintiffs' counsel admitted that their case was "more of a 'programmatic challenge'" during a meet and confer about potential consolidation.  Doc. 49-2, at 3.  While Plaintiffs' counsel has since attempted to muddy the record about that conferral, *see* Doc. 61, at 3, he has never specifically denied that he described Plaintiffs' case as a "programmatic challenge" during the conferral.

unwritten decision as the *Louisiana* plaintiffs, Consolidation Reply 2, because their suit was filed more than ninety days after the *Louisiana* suit.  *See* 30 U.S.C. § 226-2.

This straightforward application of § 226-2 does not leave Plaintiffs without any recourse, as subsequent decisions to postpone lease sales or allegedly unreasonable delays in holding lease sales potentially remain subject to challenge through a timely pleading.  But Plaintiffs cannot group "Defendants' collective actions" together, Compl. ¶ 76, to bring an untimely challenge to MLA decisions that occurred—and were publicly announced—more than ninety days before Plaintiffs filed suit.  *See Texas v. United States*, 891 F.3d 553, 563 (5th Cir. 2018) (refusing to apply the "continuing violations doctrine" to allow Texas to challenge public actions that occurred outside the applicable statute of limitations because "the doctrine must be used 'sparingly'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002))).

In sum, Plaintiffs are time-barred from challenging any of the BLM decisions described in Paragraphs 72–73 of the Complaint, and they are similarly time-barred from challenging the leasing moratorium that Plaintiffs allege was adopted no later than March 24, 2021.  *See* Compl. ¶ 72.  Because "no [such] action . . . shall be maintained," 30 U.S.C. § 226-2, the Court should dismiss the Third Cause of Action in its entirety, and the First, Second, and Eighth Causes of Action insofar as they pertain to onshore lease sales.

## CONCLUSION

Plaintiffs' case should be dismissed without prejudice or transferred to the U.S. District Court for the District of Columbia because venue is improper in this Court.  If the Court determines venue is proper, however, and does not dismiss the suit in its entirety, Plaintiffs' Sixth Cause of Action should be dismissed because it lies within the exclusive jurisdiction of the D.C. Circuit.  Additionally, Plaintiffs' Third Cause of Action and the onshore portions of

Plaintiffs' First, Second, and Eighth Causes of Action should be dismissed under the MLA's

ninety-day statute of limitations, 30 U.S.C. § 226-2.

Respectfully submitted this 15th day of November, 2021.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

*/s/      Michael S. Sawyer*
THOMAS W. PORTS, JR.
MICHAEL S. SAWYER
Trial Attorneys, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:      (202) 305-5492 (Ports)
                (202) 514-5273 (Sawyer)
Fax:            (202) 305-0506
Email:          Thomas.Ports.Jr@usdoj.gov
                Michael.Sawyer@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2021, I filed the foregoing document

electronically through the CM/ECF system, which caused all parties or counsel of record to

be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Michael S. Sawyer*
Michael S. Sawyer

19