## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **AMERICAN PETROLEUM INSTITUTE ET AL.** | : | **CASE NO. 2:21-CV-02506** |
| **VERSUS** | : | **JUDGE TERRY A. DOUGHTY** |
| **U.S. DEPT. OF INTERIOR ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## <u>REPORT AND RECOMMENDATION</u>

Before the court is defendants' partial Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, which requests that this court dismiss certain claims from plaintiffs' First Supplemental and Amended Complaint.  Doc. 75.    The Motion is opposed by plaintiffs, and movants have filed a reply, making the motion ready for resolution. Docs. 79, 81. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

After careful consideration of this motion, the responses and replies thereto, and the applicable law, for the reasons that follow, **IT IS RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part, that plaintiffs' sixth cause of action be dismissed without prejudice, and that plaintiffs' seventh cause of action be dismissed with prejudice.

## I.
### BACKGROUND

This lawsuit concerns a decision by certain federal agencies to indefinitely halt certain oil and gas sales lease sales in accordance with an executive order issued by President Biden (the

"Pause").[1]  The plaintiffs are associations with ties to the oil and gas industry:  American Petroleum Institute, American Exploration and Production Council, Independent Petroleum Association of America, International Association of Drilling Contractors, National Ocean Industries Association, Montana Petroleum Association, North Dakota Petroleum Council, Petroleum Alliance of Oklahoma, Southeast Oil & Gas Association, Utah Petroleum Association, Western States Petroleum Association, Aries Marine Corporation ("Aries"), EnerGeo Alliance, and Valveworks U S A Inc. ("Valveworks").  The plaintiffs brought suit against the U.S. Department of Interior ("DOI"), the Bureau of Land Management ("BLM"), and the Bureau of Ocean Energy Management ("BOEM"), along with individual officers of the DOI, BLM, and BOEM,[2] alleging that DOI, acting through the other defendants, instituted a *de facto* "indefinite moratorium on all federal oil and gas lease sales onshore and on the Outer Continental Shelf ('OCS')" in response to Section 208 of President Biden's Executive Order 14008.   Doc. 68, ¶ 1-2.  Section 208 instructs the Secretary of the Interior (the "Secretary") to "pause new oil and natural gas leases on public lands or in offshore waters pending completion of a comprehensive review and reconsideration of Federal oil and gas permitting and leasing practices." *Id.*, p. 1 (quoting 86 Fed. Reg. at 7,624-25). Plaintiffs allege that, in complying with Section 208, the defendants acted in contravention of the Administrative Procedure Act ("APA"), the Mineral Leasing Act ("MLA"), the Mineral Leasing Act for Acquired Lands ("MLAAL"), the Outer Continental Shelf Lands Act's (OCSLA's) Five-Year Leasing Program requirement, the Federal Land Policy and Management Act ("FLPMA"),

---

[1] As used in this report and recommendation, the term "Pause" refers to the temporary cessation of oil and gas sales undertaken in accordance with Section 208 of President Biden's Executive Order 14008, as that term is defined and used in *Louisiana v. Biden*, No. 2:21-CV-00778, 2022 WL 3570933, at *7 (W.D. La. Aug. 18, 2022)(memorandum ruling on cross-motions for summary judgment).

[2] In addition to DOI, BLM, and BOEM, the defendants are individual officers of those agencies:  Secretary of the Interior Debra Haaland, Principal Deputy Assistant Secretary for Land & Minerals Management Laura Daniel-Davis, Deputy Director of Policy & Programs of the BLM Nada Culver, and Director of the BOEM Amanda Lefton.

applicable Resource Management Plans ("RMPs") and the National Environmental Policy Act ("NEPA"). *Id.*, p. 2-3. The plaintiffs bring eight causes of action based on these allegations.

In their Motion to Dismiss, defendants argue that plaintiffs third[3], sixth, and seventh causes of action, and the onshore portions of the first, second, and eighth causes of action, should be dismissed under provisions of Fed. R. Civ. P. 12(b). Doc. 75.

## II.
### SIXTH CAUSE OF ACTION – EXCLUSIVE JURISDICTION OF THE D.C. CIRCUIT

Defendants assert that the sixth cause of action, concerning the issuance of a new Five-Year Leasing Program under OCSLA, must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The jurisdictional question presented here is whether 43 U.S.C. § 1349(c)(1) grants the United States Court of Appeals for the District of Columbia exclusive jurisdiction to review the Secretary's decision to pause leasing on the OCS, which plaintiffs allege violates OCSLA insofar as it would prevent the Secretary from promulgating a new Five-Year plan, as required under OCSLA.[4] Doc. 68, p. 26-27.

### A. Background and the Parties' Arguments

The sixth cause of action alleges that the Pause indefinitely precludes further OCS lease sales and therefore "ensures Defendants will not timely adopt a new Five-Year Leasing Program." *Id.* Plaintiffs allege that the Pause thereby violates OCSLA, "through inaction ensur[ing]" no further lease sales can take place after the expiration of the most recent Five-Year Plan on July 1, 2022. *Id.* (citing 43 U.S.C. § 1344(d)(3)). Plaintiffs also allege that OCSLA does not provide the

---

[3] In their arguments to dismiss the third cause of action, defendants also seek dismissal of the onshore portions of the first, second, and eighth causes of action.

[4] The court treats this question as distinct from the question recently answered by this court in *Louisiana v. Biden*, which addressed the validity of the executive order itself and "whether President Biden had the authority to order a stop on oil and gas activities in light of the Outer Continental Shelf Lands Act [ . . .]." *Louisiana v. Biden*, No. 2:21-CV-00778, 2022 WL 3570933, at *1 (W.D. La. Aug. 18, 2022).

Secretary the statutory authority to indefinitely cease oil and gas leasing on the OCS, and that the decision to pause leasing violates the APA as arbitrary and capricious. *Id.* (citing 5 U.S.C. § 706). Plaintiffs therefore pray for relief that would "[d]eclare that Defendants' actions are beyond their statutory authority under the [ . . . ] OCSLA" and "[c]ompel Defendants to promptly adopt a new Five-Year Leasing Program for OCS leasing." *Id.*, p. 29 (omission added).

OCSLA provides in relevant part that, "[a]ny action of the Secretary to approve a leasing program pursuant to section 1344 of this title shall be subject to judicial review only in the United States Court of Appeal for the District of Columbia." 43 U.S.C. § 1349(c)(1)(internal footnote omitted). Defendants argue that any court granted exclusive jurisdiction to review agency action on a subject must also have exclusive jurisdiction to review agency inaction regarding the same subject, and they move to dismiss or transfer the sixth cause of action on the basis that the Secretary's decision to pause offshore leasing in accordance with Section 208 of Executive Order 14008 falls within the exclusive jurisdiction of the D.C. Circuit. Doc. 75, att. 1, p. 7, 11-16.

Plaintiffs respond that the jurisdictional provision at 43 U.S.C. § 1349(c)(1) does not apply here because the Secretary has not taken an "action [ . . . ] to *approve* a leasing program[,]" and that this court therefore has jurisdiction to decide this issue. Doc. 79, p. 12 (emphasis added). Suggesting that various factors militate against interpreting the statute to encompass agency inaction,[5] plaintiffs also emphasize that this is the first time in four decades that the Secretary will have failed to prepare a leasing program in accordance with 43 U.S.C. § 1344(a). *Id.*, p. 12-17.

---

[5] In addition to arguing that the plaintiffs do not challenge an action to *approve* a leasing program, plaintiffs argue that prior challenges under 43 U.S.C. § 1349(c)(1) have involved the substantive content of approved programs [*id.*, p. 13]; that this "qualitatively different" claim should not be read to fall under an exclusive jurisdictional provision governing dissimilar claims [*id.*, p. 14 (citing *League of Conservation Voters v. Trump*, 303 F. Supp. 3d 985, 1003 (D. Alaska 2018)]; that the D.C. Circuit's expertise in reviewing substantive program details is not needed here [*id.*, p. 14-15]; and that reading "approve" to include "failure to approve" strains the plain meaning of the text [*id.*, p. 15-16]. These arguments do not require further comment in light of our resolution of this issue.

## B.  Intervening Events

Before addressing this question, the court takes judicial notice of relevant intervening events.  In related litigation pending before this court, the district judge recently found that "[t]here is no statutory authority that authorizes the Executive Branch to Pause the OCSLA Five Year Plan[,]" holding that "Section 208 of Executive Order 14008 is *ultra vires*, beyond the authority of the President of the United States, and in violation of the OCSLA and the MLA." *Louisiana v. Biden*, No. 2:21-CV-00778, 2022 WL 3570933, at *12 (W.D. La. Aug. 18, 2022)(memorandum ruling on cross-motions for summary judgment).  This court granted summary judgment finding that the Pause violated various provisions of the APA and issued a permanent injunction enjoining the defendants from "implementing a Stop, referred to in Executive Order 14008 as a Pause, on new oil and gas leases on public lands and in offshore waters, as set forth in Section 208 of Executive Order 14008, as to all 'eligible' lands both onshore and offshore."[6]  *Id.* at *20.

Several weeks earlier, the Bureau of Ocean Energy Management published in the Federal Register a "Notice of Availability of the 2023-2028 National Outer Continental Shelf Oil and Gas Leasing Proposed Program and Draft Programmatic Environmental Impact Statement."  87 Fed. Reg. 40859 (July 8, 2022).  This publication indicates that the five-step process by which the Secretary approves a new Five-Year Plan is underway, with three of the five steps accomplished. The 90-day public comment period on the proposed program will end on October 6, 2022. *Id.*

## C.  Legal Standard—Motion to Dismiss for Lack of Subject Matter Jurisdiction

"When courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case." *Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 225 (5th

---

[6] The geographic scope of the permanent injunction is limited to "Louisiana, Alabama, Alaska, Arkansas, Georgia, Mississippi, Missouri, Montana, Nebraska, Oklahoma, Texas, Utah, and West Virginia."  *Louisiana v. Biden*, 2022 WL 3570933 at *20.

Cir. 2017). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ascroft v. Iqbal*, 129 S. Ct. 1937, 1945 (2009). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id.* Subject matter jurisdiction "must be proved by a preponderance of the evidence." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020). "A district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

### D.  Analysis

To the extent that the intervening events leave a meaningful controversy for this court to resolve as to the sixth cause of action, we find that the plaintiff's sixth cause of action falls within the exclusive jurisdiction of the D.C. Circuit and should therefore be dismissed. The United States Supreme Court addressed an analogous question in *Florida Power & Light Co. v. Lorion*, where it held, *inter alia*, that "[a]bsent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals." 105 S. Ct. 1598, 1607 (1985). That case considered whether the courts of appeal had initial subject matter jurisdiction over an action of the Nuclear Regulatory Commission ("NRC"), where the relevant statutory language provided for initial appellate jurisdiction over petitions seeking review of "final orders" entered in any "proceeding" for the "granting, suspending, revoking, or amending of any

license." *Id.* at 1601 (quoting 28 U.S.C. § 2342(4), 42 U.S.C. § 2239(b), and 42 U.S.C. § 2239(a)(1)).  The NRC action at issue was a decision—made without any formal proceeding such as a hearing—denying a citizen's request to suspend a nuclear reactor's operating license.  *Id.* at 1600-01.  The specific question before the Court was "whether such an order is issued in a 'proceeding ... for the granting, suspending, revoking, or amending of any license.'"  *Id.* at 1602 (quoting 42 U.S.C. § 2239)(alteration original).  The case required the court to determine whether the word "proceeding" in the statute meant that the jurisdictional grant applied only to NRC actions issued in a formal proceeding such as a hearing.  *Id.* at 1605-06. Considering the legislative history of the statutes at issue, the Court discerned no legislative intent to limit initial appellate review to agency actions involving a hearing.  *Id.* at 1608.  The court determined that the question of initial appellate review should turn on the subject matter of the complaint, not the procedure that gave rise to it.  *Id.*

The United States Court of Appeals for the Fifth Circuit has also held that, where a statute grants exclusive jurisdiction to review past actions of an agency, that exclusive jurisdiction extends to review of inaction.  *JTB Tools & Oilfield Services, L.L.C. v. United States*, 831 F. 3d 597, 599 (5th Cir. 2016).  In *JTB Tools*, the Fifth Circuit considered whether the Occupational Safety and Health Act (the "OSH Act") vests the appellate courts with exclusive jurisdiction to review standards an agency *declines* to issue, where the relevant statute allows for aggrieved persons to seek judicial review of "a *standard issued* under this section" by filing "a petition challenging the validity of such standard with the United States court of appeals [ . . . ]."  *Id.* (quoting 29 U.S.C. § 655)(emphasis added).  In that case, plaintiff petitioned the Occupational Safety and Health Administration ("OSHA") to issue a new safety standard.  *Id.* at 598-99.  After the Assistant Secretary for OSHA declined to issue the requested standard and litigation ensued, the Fifth Circuit

confirmed that the appellate courts are "vested with exclusive jurisdiction to conduct judicial review over health and safety standards that the Secretary has declined to issue," reasoning that "where courts of appeals have exclusive jurisdiction to review OSHA actions, they also have exclusive authority to resolve allegations that OSHA unlawfully failed to act." *Id.* at 599-600.  In other words, the Fifth Circuit held that "[b]ecause JTB Tools alleges that OSHA improperly denied its request for a new standard, we have exclusive jurisdiction to decide this case." *Id.* at 601.

Although the plain language of the statute at issue in this matter reserves to the D.C. Circuit review of an "action [ . . . ] to approve a leasing program[,]" and the decision complained of here is inaction by the Secretary that threatened to indefinitely delay approval of a leasing program, the reasoning of *JTB Tools* requires us to conclude that where an appellate court has "exclusive jurisdiction to review" the Secretary's actions to approve a leasing program, it also has "exclusive authority to resolve allegations that [the Secretary] unlawfully failed to act." *Id.* at 599-600.

Applying the reasoning of *JTB Tools*, we recommend that the district court find that plaintiffs' sixth cause of action falls within the exclusive jurisdiction of the D.C. Circuit and dismiss that cause of action without prejudice because this court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235, 1240 (2006).

### III.
### TIMELINESS OF THE THIRD CAUSE OF ACTION AND THE ONSHORE PORTIONS OF THE FIRST, SECOND, AND EIGHTH CAUSES OF ACTION

Defendants argue that the third cause of action and the onshore portions of the first, second, and eighth causes of action should be dismissed as untimely.  Doc. 75, att. 1, p. 17.  These causes of action all concern on-shore lease sales allegedly not held because of the Pause, and defendants urge us to find the claims untimely because of a provision of the MLA setting a 90-day statute of

limitations on actions of the Secretary involving oil and gas leases.  For the reasons that follow, we cannot recommend that these causes of action be dismissed.

### A. Background and Parties' Arguments

In the third cause of action, plaintiffs contend that BLM's decision to halt all onshore federal oil and gas lease sales violates MLA's substantive requirements and the APA's procedural requirements because the MLA requires BLM to hold lease sales for eligible lands at least quarterly.  Doc. 68, p. 23 (citing 30 U.S.C. § 226,  5 U.S.C. § 706).  The first, second, and eighth causes of action do not specifically invoke the MLA.  These causes of action allege, respectively, that defendants' departure from the status quo without sufficient explanation violates the APA; that defendants' actions lack record support in violation of the APA; and that the Pause violates the procedural requirements for substantive rulemaking under the APA.  *Id.*, p. 20-21, 28.

Under 30 U.S.C. § 226-2, actions of the Secretary of Interior concerning oil and gas leases are subject to a 90-day statute of limitations.  The statute reads in relevant part,

> No action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter.

*Id.*  In moving to dismiss the challenged causes of action, defendants assert that all of the decisions discussed in the Amended Complaint occurred outside the 90-day window.  Doc. 75, att. 1, p. 17-20.  Defendants reason that, in enumerating the specific challenged onshore decisions, the Amended Complaint identifies only decisions that occurred between January and April 2021, and that the Amended Complaint alleges elsewhere that the plaintiffs challenge the "same federal oil and gas leasing moratorium" that was challenged in the original state-court action in *Louisiana v. Biden*, No. 21-cv-778 (W.D. La. 3/24/21).  *Id.*, p. 17.  Therefore, the defendants posit that the these causes of action must be untimely because all the challenged decisions must have taken place

before March 24, 2021 (when *Louisiana v. Biden* commenced), but the initial complaint was not filed until August 16, 2021, well after 90 days later.  *See* Doc. 1.

 Plaintiffs respond that the defendants' arguments mischaracterize plaintiffs' claims as challenging a series of unrelated lease sale decisions, when in fact the plaintiffs challenge a global and ongoing decision to halt all new leasing.  Doc. 79, p. 17.  Plaintiffs argue that 30 U.S.C. § 226-2 does not apply here because it governs review of decisions about particular leases, not a global decision to discontinue *all* lease *sales*.  *Id.*  Plaintiffs also argue that even if their complaints about certain lease sales were time-barred by 30 U.S.C. § 226-2, plaintiffs still seek redress for injuries stemming from cancelled lease sales that were scheduled for the second quarter of 2021—within 90 days of the filing of the Amended Complaint.  *Id.*, p. 19.  The third cause of action specifically references the decision to halt "all onshore federal oil and gas lease sales for the first and second quarters of 2021."  Doc. 68, p. 23, ¶ 101.

 **B.  Legal Standard and Analysis**

 The defendants do not explicitly state which provision of Fed. R. Civ. P. 12(b) would require dismissal of the allegedly untimely claims, and the court will not make assumptions as to their intentions.  In the case on which defendants rely most heavily, the court explains at the outset that "[t]his case presents only questions of law," and renders judgment based on a round of briefing, as stipulated by the parties, making it dissimilar from the instant request for dismissal at the pleadings stage.  *Impact Energy Res., LLC v. Salazar*, No. 2:09-CV-435, 2010 WL 3489544, at *1 (D. Utah Sept. 1, 2010), *aff'd*, 693 F.3d 1239 (10th Cir. 2012).  This indicates that the resolution of this question would be more appropriate to a summary judgment motion than to a motion to dismiss.

"The Court is loath to grant a motion to dismiss where, as here, the statute of limitations issue turns on disputed facts." *Rachal v. Select Portfolio Servicing, Inc.*, No. 4:17-CV-871-ALM-CAN, 2018 WL 3193835, at *4 (E.D. Tex. June 5, 2018), *report and recommendation adopted*, No. 4:17-CV-871, 2018 WL 3156145 (E.D. Tex. June 28, 2018).  "The applicability of a statute of limitations defense normally presents mixed questions of law and fact."  51 Am. Jur. 2d Limitation of Actions § 408.  The existence of unresolved fact issues and mixed issues of law and fact makes dismissal inappropriate at this stage.

Here, a key dispute, that involves a mixed question of law and fact, is which action or actions described in the Amended Complaint, if any, constitute a "decision of the Secretary involving any oil and gas lease" for the purposes of 30 U.S.C. § 226-2.  A second key dispute, also involving a mixed question of law and fact, is when the 90-day limitation period begins to run,[7] where the third cause of action includes the allegation that defendants "have not announced the resumption of leasing."  Doc. 68, p. 23, ¶ 101.  Although the defendants argue that the decisions of which plaintiffs complain must have been implemented by at least March 24, 2021, the plaintiffs argue that the Pause was an ongoing decision not to resume leasing that could have been reversed or lifted at any time, such that actions occurring through the second or third quarter of 2021 could be relevant to the timeliness inquiry.[8]  Because these mixed questions of law and fact remain, we

---

[7] The limitation period begins to run from "the final decision of the Secretary relating to such matter."  30 U.S.C. § 226-2.

[8] We also take judicial notice of a recent ruling by the United States District Court for the District of Wyoming, which describes the process by which second quarter lease sales were "eventually postponed or cancelled," noting that "the DOI and BLM took a circuitous route to that end."   Order Upholding Agency Action on Judicial Review, *Western Energy Alliance v. Biden*, 2:21-cv-013-SWS at 8 (D. Wyo. Sept. 2, 2022)(Doc. 115).  Without adopting that court's legal conclusions, we find that its description of the "circuitous" route to the cancellation of second quarter lease sales strengthens our conclusion that unresolved issues of fact remain as to what events might have triggered running of the statute of limitations under 30 U.S.C. § 226-2.

decline to recommend that the district court dismiss any of plaintiffs claims as untimely under the MLA at this stage of the proceedings.

Further, we find the MLA's 90-day limitation period in 30 U.S.C. § 226-2 inapplicable to the onshore portions of plaintiffs' first, second, and eighth causes of action because the "ninety-day limitations period applies only to actions 'alleging failure to comply with [MLLA]' and not to actions alleging failure to comply with other statutes—even if those actions directly involve oil and gas leases." *S. Utah Wilderness All. v. United States Dep't of the Interior*, 250 F. Supp. 3d 1068, 1085 (D. Utah 2017)(alteration original); *see also Aulston v. U.S.*, 915 F.2d 584, 588 n. 4 (10th Cir. 1990).   The first, second, and eighth causes of action all specifically allege noncompliance with the APA, not the MLA.  Doc. 68, p. 20, 21, 28.

## IV.
### SEVENTH CAUSE OF ACTION – NEPA CLAIMS

Plaintiffs' seventh cause of action alleges that defendants violated NEPA by failing to prepare an Environmental Impact Statement ("EIS") or other environmental assessment before implementing the Pause.  Doc. 68, p. 27.  Defendants seek dismissal of the seventh cause of action on two grounds:  that it fails to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6), and that venue is improper.  Doc. 75, att. 1, p. 20-28.   For the reasons that follow, we recommend dismissal of the seventh cause of action for failure to state a claim on which relief can be granted.

**A.  Do the NEPA claims fall within NEPA's zone of interest?**

Defendants argue that the plaintiffs' seventh cause of action must be dismissed for failure to state a claim on which relief can be granted under Fed. R. Civ. P. 12(b)(6) because plaintiffs have not alleged injuries that fall within the zone of interests protected by NEPA.  Doc. 75, att. 1, p. 21-23.   Generally speaking, purely economic injuries do not fall within NEPA's zone of

interests, and defendants seek dismissal on this basis.  We first examine Plaintiffs' NEPA claims and then determine whether these claims fit into the broad zone of interests protected under NEPA.

### *1.  Legal Standard – Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)*

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations.  When ruling on a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and it construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party.  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged [ . . . ] Determining whether a complaint states a plausible claim for relief [  . . . is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949-50.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Id.*  Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 129 S. Ct. at 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### 2. *Plaintiffs' NEPA Claims*

The seventh cause of action is straightforward:  plaintiffs allege that by implementing the Pause without first performing any sort of assessment of its potential environmental impacts, defendants violated NEPA, which requires federal agencies to prepare an EIS before undertaking "major federal actions significantly affecting the quality of the human environment[.]" Doc. 68, p. 27 (citing 42 U.S.C. § 4332(C)).  Plaintiffs argue that a nationwide pause of oil and gas leasing necessarily qualifies as a major federal action significantly affecting the quality of the human environment; therefore, plaintiffs allege that the defendants should have conducted an EIS before implementing the Pause.  *Id.*

Other than stating that this violation "denies the public its right to participate in informed agency decision-making," the seventh cause of action itself does not explicitly indicate how plaintiffs are harmed by the alleged NEPA violation. *Id.*, ¶ 133.  Elsewhere in the Amended Complaint plaintiffs explain that the Pause could result in a net increase in greenhouse gas emissions "because of the effect of substituting oil and gas production and imports from countries with less robust environmental regulation surrounding oil and gas production."[9]  *Id.*, p. 22, ¶ 93. The Amended Complaint does not make an explicit connection between the NEPA claim and the assertion that the Pause could cause a net increase in global greenhouse gas emissions, other than to suggest that defendants should have known that negative environmental impacts could result from the Pause.  Otherwise, the injuries asserted in the Amended Complaint are economic in nature

---

[9] As evidence that this is not a hypothetical concern, the Amended Complaint points specifically to the 2017 programmatic EIS issued in connection with the most recent Five-Year Leasing Plan, which "concluded that greenhouse gas emissions relating to the lease sales in the proposed leasing program would be lower than a no-action alternative."  Doc. 68, p. 22, ¶ 93.  This finding was also discussed recently in *Friends of the Earth v. Haaland*, 583 F. Supp. 3d 113, 143 (D.D.C. 2022), *appeal dismissed in part* No. 22-5036, 2022 WL 4293098 (D.C. Cir. Apr. 15, 2022).

and stem from the fact that plaintiffs' members have made significant investments in reliance on the availability of new oil and gas leases.  *Id.*, p. 19-20.

### 3. *NEPA's Purpose and Zone of Interests*

"Congress passed NEPA 'to promote human welfare by alerting governmental actors to the effect of their proposed actions on the physical environment.'" *Gen. Land Off. v. United States Dep't of the Interior*, 947 F.3d 309, 314 (5th Cir. 2020) (quoting *Metro. Edison Co. v. People Against Nuclear Energy*, 103 S. Ct. 1556 (1983).  NEPA was enacted to

> declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the nation[.]

42 U.S.C. § 4321.  NEPA requires federal agencies to prepare an Environmental Impact Statement ("EIS") before undertaking "major federal actions significantly affecting the quality of the human environment[.]" 42 U.S.C. § 4332(C).  "[E]conomic or social effects are not intended by themselves to require preparation of an environmental impact statement." 40 C.F.R. § 1508.14.

NEPA is designed to require federal agencies to consider environmental impacts in their decisionmaking.  *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 676 (5th Cir. 1992) (citing *Robertson v. Methow Valley Citizens Council*, 109 S. Ct. 1835, 1846 (1989)).  NEPA does not "mandate particular results, but simply prescribes the necessary process." *Robertson*, 109 S. Ct. at 1846.  The intent of NEPA is to "require that agencies take a 'hard look at environmental consequences,'" and "provide for broad dissemination of relevant environmental information." *Id.* (quoting *Kleppe v. Sierra Club*, 96 S. Ct. 2718, 2730 n. 21 (1976)(internal quotation marks omitted)).  While the statute makes reference to human health and welfare, the Supreme Court has explained that those considerations do not form the statute's primary focus. Rather, those "goals

are *ends* that Congress has chosen to pursue by *means* of protecting the physical environment." *Metro. Edison Co. v. People Against Nuclear Energy*, 103 S. Ct. 1556, 1561(1983) (emphasis original).

In asking whether plaintiffs state a claim within NEPA's zone of interests, we are considering whether plaintiffs have statutory standing under NEPA, an inquiry distinct from Article III standing, which is not at issue here.[10]   To show statutory standing under NEPA, a plaintiff must show that the injury he complains of "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the basis for his complaint." *Sabine River Auth. v. United States Dep't of Interior*, 951 F.2d 669, 675 (5th Cir. 1992)(quoting *Lujan v. Nat'l Wildlife Fed'n*, 110 S. Ct. 3117, 3186 (1990)).  The "'zone of interests' test 'is not meant to be especially demanding.'" *Ecosystem Inv. Partners v. Crosby Dredging, L.L.C.*, 729 Fed. Appx. 287, 294 (5th Cir. 2018) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012)). It "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (internal quotation marks omitted).

The majority of NEPA authority nationwide makes clear that economic injury alone does not satisfy the statute's zone of interest test. *See, e.g.*, *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005) (collecting cases and noting that the "zone of interests" protected by NEPA is "environmental" and that courts have thus "consistently held that purely economic interests do not fall within NEPA's zone of interests"); *see also Viasat, Inc. v. Fed. Commc'ns*

---

[10] "The standing inquiry has constitutional, statutory, and judicially formulated components."  *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 673–74 (5th Cir. 1992).  As plaintiffs discuss in their opposition briefing, defendants have not argued that plaintiffs lack constitutional standing, and the court does not address that question.

*Comm'n*, 47 F.4th 769 (D.C. Cir. 2022) (holding that concerns about increased operating costs from satellite congestion in outer space "are economic—and thus fall outside the zone of interests protected by NEPA"); *Ecosystem Inv.*, 729 F. App'x at 294 & n. 6 (noting that a NEPA plaintiff may suffer both environmental and economic injuries, but finding that "[n]aturally, NEPA's zone of interests covers environmental injuries and not purely economic ones.").  NEPA plaintiffs need not be "pure of heart," *Ecosystem Inv.*, 729 F. App'x at 294 n. 6, but NEPA "cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant."  *Town of Stratford, Connecticut v. F.A.A.*, 285 F.3d 84, 88 (D.C. Cir. 2002).  "To be among those that Congress intended to bring suit under NEPA, a plaintiff's actual interests must substantially align with the protection of our physical environment."  *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 194 (3d Cir. 2016).

In the most relevant case from the Fifth Circuit, the court reviewed a decision to dismiss a case under Fed. R. Civ. P. 12(b)(6), holding that an environmental mitigation credit banker failed to allege an injury in NEPA's zone of interests where it alleged only economic injury as a result of a government project, even though it demonstrated a professional interest in protecting the environment.  *Ecosystem Inv.*, 729 F. App'x at 289.  In that case, the court considered both Article III standing (which is not raised here) and the related question of whether plaintiff's NEPA claim fell within NEPA's zone of interest (statutory standing), and it concluded that plaintiff had "Article III standing but no statutory standing—that is, it lacks a 'legislatively conferred cause of action.'"  *Id.* at 291.  Even though the plaintiff was a company committed to creating environmental mitigation credits—and therefore clearly demonstrated generalized environmental interests—and even though it showed economic injury-in-fact stemming from a government project, the court

concluded that plaintiff did not allege an injury within NEPA's zone of interest because it plead no environmental injury directly related to that project.  *Id.*

### 4.  *Analysis*

Applying the reasoning of *Ecosystem Investment Partners*, we recommend that the district judge find that the plaintiffs here also lack statutory standing under NEPA.  The only environmental injuries the plaintiffs articulate are related to the public's generalized interest in informed decision making and the possibility that the Pause could cause a net increase in greenhouse gas emissions.  Although plaintiffs assert in briefing that they feel this injury keenly,[11] the interests that are harmed thereby are either economic in nature or flow from their general interest in promoting environmentally responsible economic development, interests that do not fall within NEPA's zone of interests. "[G]eneral environmental injuries" are insufficient to state a NEPA claim.  *Optimus Steel, LLC v. U.S. Army Corps of Engineers*, 492 F. Supp. 3d 701, 717 (E.D. Tex. 2020) (alteration added)(finding that a steel mill lacked an environmental interest required to bring a NEPA challenge to project occurring near its land). "A party cannot simply rely on its or the public's free-floating interest in environmental stewardship" to bring a NEPA claim. *Ecosystem Inv.*, 729 F. App'x at 299.

Contrary to plaintiffs' suggestion, even if the defendants have "committed a procedural violation of NEPA, this does not mean that [plaintiffs] sustained an injury that constitutes anything other than pecuniary damage, much less environmental harm." *Ecosystem Inv. Partners v. United States*, No. CV 16-16504, 2017 WL 3888602, at *3 (E.D. La. May 2, 2017), *aff'd*, 729 Fed. App'x 287 (5th Cir. 2018).  Although plaintiffs emphasize that the relevant effects NEPA seeks to protect

---

[11]  In their opposition briefing, plaintiffs assert that they are committed to environmentally-responsible energy development and therefore "keenly" feel the potential for an "*increase* in greenhouse gas emissions due to heavier reliance on foreign sources."  Doc. 79, p. 25 (emphasis original).

can include economic impacts from governmental action, the Supreme Court has cautioned against

such an expansive reading of NEPA's purpose.  "If we were to seize the word 'environmental' out

of its context and give it the broadest possible definition, the words 'adverse environmental effects'

might embrace virtually any consequence of a governmental action that someone thought

'adverse.'  But we think the context of the statute shows that Congress was talking about the

physical environment—the world around us, so to speak."  *Metro. Edison Co. v. People Against*

*Nuclear Energy*, 103 S. Ct. 1556, 1560, (1983).  Finding that plaintiffs fail to state a claim within

NEPA's zone of interests, we recommend dismissal of the seventh cause of action under Fed. R.

Civ. P. 12(b)(6), with prejudice.

### B.  Are the plaintiffs' NEPA claims in an improper venue?

Defendants assert a second basis for dismissal of  the seventh cause of action, arguing that

it must be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3) because no defendant

resides here and no plaintiff with a cognizable NEPA claim resides here.  Doc. 75, att. 1, p. 23-28.

Their argument is two-part.  First, they argue that local contractor plaintiffs Aries and Valveworks

have alleged only purely economic injuries, and purely economic injuries do not fall within

NEPA's zone of interests.  *Id.*, p. 22.  Second, they argue that, because Aries and Valveworks are

the only plaintiffs with a connection to this jurisdiction, the venue for plaintiffs' NEPA claim is

improper.

An action under NEPA, like other civil actions in which a defendant is a government

officer, employee, or agency, may be brought in any judicial district in which:

> (1) a defendant in the action resides;
>
> (2) a substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the action is
> situated; or
>
> (3) the plaintiff resides, if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).

Plaintiffs allege that venue is proper under 28 U.S.C. §1391(e)(1) on alternative bases: 1) because a substantial part of the events or omissions giving rise to the complaint occur within this judicial district, 2) because contractor plaintiffs Aries and Valveworks reside in this district, and 3) because many of plaintiffs' members are located in this district, noting that no real property is involved in the action.  Doc. 68, p. 9, ¶ 30.

### 1.  *Legal Standard – Motion to Dismiss for Improper Venue*

A party may move to dismiss an action for "improper venue." Fed. R. Civ. P. 12(b)(3). "When an objection to venue is raised, the plaintiff bears the burden of demonstrating that venue is proper in the selected forum." *UOP LLC v. Exterran Energy Sols., L.P.*, No. MO:20-CV-233-DC, 2021 WL 4096560, at *2 (W.D. Tex. Aug. 26, 2021). The court must review any factual matters in the light most favorable to the non-moving party but can evaluate facts by considering "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009) (citation omitted). A case filed in the wrong division or district shall be dismissed, unless the court determines it would be in the interest of justice to transfer the case to any district or division in which venue is proper and the case could have been brought. *See* 28 U.S.C. § 1406(a).

Because no defendant resides in this district,[12] and no real property is involved, venue here can only be based on the second and third prongs of the venue statute, and venue would be proper

---

[12] Defendants are federal agencies and officers.  Plaintiffs do not allege that defendants' residences form a basis for venue. Doc. 68, p. 9, ¶ 30.

only in districts where "a substantial part of the events or omissions giving rise to the claim occurred," or "the plaintiff resides."  28 U.S.C. § 1391(e)(1).

### 2. *Analysis*

Defendants argue that plaintiffs' NEPA claims have been brought in an improper venue as an alternative to the argument that the NEPA claims fail to state a claim under Fed. R. Civ. P. 12(b)(6).  Because we have already determined that plaintiffs' claims fail to state a claim within NEPA's zone of interest, the venue issue is moot.

Assuming for the sake of argument and appeal that plaintiffs do state valid NEPA claims, then venue would be proper in this district.  Plaintiffs Aries and Valveworks are alleged to be Louisiana corporations with principal places of business in Louisiana.  Doc. 68, p. 8, ¶ 19-20.  Aries has its principal place of business in Lafayette, Louisiana (within the geographic bounds of this district), and Valveworks has its principal place of business in Bossier City, Louisiana (also in this district).  "Aries owns and operates workboats and supply vessels servicing oil and gas operators holding leases on the Outer Continental Shelf."  *Id.*, ¶ 19.  "Valveworks manufactures, sells, and services valves and other well head equipment used by oil and gas operators holding leases onshore and on the Outer Continental Shelf."  *Id.*, ¶ 20.  Aries and Valveworks are alleged to have derived "substantial revenues from sales of products and the provision of services to operators on federal oil and gas leases[,]" such that they would allegedly suffer economic harm by the discontinuance of federal oil and gas leasing activity.  *Id.*, p. 20, ¶ 79.  To the extent that the economic harms suffered by Aries and Valveworks could give rise to a valid NEPA claim—and the court does *not* so find—then those harms were incurred in this district, making venue proper here.  28 U.S.C. § 1391(e)(1).

## V.

### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that defendants' partial motion to dismiss Doc. 75 be **GRANTED in part**, as follows:

**IT IS RECOMMENDED** that plaintiffs' sixth cause of action be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

**IT IS FURTHER RECOMMENDED** that plaintiffs' seventh cause of action be **DISMISSED** with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim within NEPA's zone of interests.

**IT IS FURTHER RECOMMENDED** that the remaining relief requested in the partial motion to dismiss be **DENIED**.

Under the provisions of 28 U.S.C. §636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429-30 (5th Cir.1996).

THUS DONE AND SIGNED in Chambers this 5th day of October, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE